## MUTUAL TRUST LIFE INS. CO. v. TARDELLI.

### No. 4664.

United States Court of Appeals First Circuit.

Jan. 28, 1953.

Bailey Aldrich, Boston, Mass. (Choate, Hall & Stewart, Boston, Mass., on brief), for appellant.

Lawrence R. Cohen, Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment entered March 19, 1952, by the United States District Court for the District of Massachusetts on verdicts denying the plaintiff-appellant, Mutual Trust Life Insurance Company, rescission of two life insurance policies and finding for the defendant-appellee on her counterclaim for the amount of the policies.

Appellant is an Illinois corporation and appellee is a citizen of Massachusetts. The face amount of the two policies is ten thousand dollars, so there is unquestioned jurisdiction under 28 U.S.C. § 1332.

The appellant sought to rescind or declare void these policies either on the ground that appellee's husband, Raymond J. Tardelli, the insured, had made material misrepresentations in his application for insurance or on the ground that at the time of delivery of the policies and payment of the first premiums, the applicant was not in good health. The appellee widow filed a counterclaim to recover the face amount of the policies.

It is admitted that due proofs of death on October 16, 1950 had been furnished and that all premiums called for by the policies had been paid. On March 14 and 18, 1952, the case was tried before a jury which returned verdicts in favor of appellee and on March 19, 1952 judgment was entered for appellee on the appellant's claim and for the appellee on her counterclaim, in the sum of $10,771.66, with costs.

Appellant contends that there was prejudicial error in rulings on evidence and in the charge to the jury. The evidentiary rulings appealed from concern the exclusion of parts of a hospital record and the exclusion of certain testimony offered through appellant's medical expert. The asserted defect in the charge is that it failed to define excessive drinking, as appellant had requested, and that it did not instruct the jury properly with regard to burden of proof. The trial court refused appellant's request to instruct the jury to the effect that under these insurance policies, good health at the time of delivery is a condition precedent to recovery.

We think that the refusal of this latter request constitutes reversible error and this inadequacy of instruction on burden of proof is ground for a new trial.

With regard to this question, appellant requested the court to charge the jury as follows: "If at the time of the delivery of the policies and the payment of the first premiums Mr. Tardelli was not in good health, you must find for the Company." After appellant had noted its objections to the court's failure to give three requests, the court added the following to its charge:

"Counsel call to my attention that I neglected to state that the burden of proof in any case is on the person who alleges it. The burden in the suit for cancellation of the policy is on the insurance company; they must satisfy you by the greater weight of the evidence that what they allege is true, that this man procured this policy through misrepresentation, or under such conditions as would increase the risk of loss. And if they have not maintained that burden, but still leave you in doubt, then they cannot cancel.

"Now, similarly in the cross action the plaintiff is ordinarily chargeable with the burden of proving his case. And in this case, I am going to charge you that the burden is still up to the plaintiff to show you by the greater weight of the evidence that what she alleges is true, that is, that he took out this insurance and that he did it in good faith, and that he should recover."

The application for insurance, which is part of the contract, describes the insured as being in good health and contains the following provision: "* *. * it is agreed as follows: * * * (2) that the Company shall incur no liability under this application until it has been received, approved, a policy issued and delivered and the full first premium specified in the policy has actually been paid to and accepted by the Company, all while the Insured's health, habits and occupation and any other condition relating to the Insured are as described

in this application. * * *" This clause creates a condition precedent, Barker v. Metropolitan Life Ins. Co., 1905, 188 Mass. 542, 74 N.E. 945 so that the burden of proving that the insured was in good health at the time of the delivery of the policies was on the appellee—beneficiary. Connolly v. John Hancock Mut. Life Ins. Co., 1948, 322 Mass. 678, 79 N.E.2d 189.

The evidence in this case definitely raised the question of whether or not the insured was in good health at the time of delivery and we think that the jury was not adequately instructed in this regard.

The policies were delivered and the first premiums were paid on November 10, 1949. There is evidence that Tardelli was a patient at the Bellows Health Farm from October 11 to 18, and from November 1 to 4, 1949, complaining of being "tired out and exhausted" and requiring treatment "to quiet the stomach and nerves." It appears from the record that this is a health farm for men, which has facilities for training athletes and for rehabilitating men and that "at the farm they include patients who have trouble with alcohol." According to the death certificate, Tardelli had been suffering from chronic alcoholism for a period of five years before his death on October 16, 1950. This was contradicted by oral testimony introduced by appellee tending to show that the addiction to alcohol had lasted only a few months.

In view of this evidence, an instruction with regard to appellee's burden of showing insured's good health on November 10, 1949, was essential for a fair consideration of appellant's defense to the counterclaim.

We do not agree with appellee's argument that any omission on this point in the charge was not prejudicial. The court instructed the jury with regard to the conflicting evidence on excessive drinking but these instructions were given in discussing the action for cancellation on the ground of misrepresentation.[1] We cannot read them as a statement that it was incumbent upon the appellee to show to the jury by a preponderance of the evidence that her husband was in good health when the policies were delivered. It was certainly prejudicial to the appellant to confuse the issue of misrepresentation with the issue of whether appellee made the showing required for recovery on her counterclaim.

Since we hold that the charge to the jury was insufficient and prejudicial to the appellant in failing to explain the burden of proof, as to the insured's health at the time of the delivery of the policies and the payment of the first premiums, it becomes unnecessary for us to decide the other questions raised on this appeal.

The judgment of the district court is vacated and the case is remanded to that court for a new trial; the appellant recovers costs on appeal.

---

1. The only portion of the charge which could support appellee's assertion of harmless error is that which says:

"* * * You must find that the statement in the death certificate regarding chronic alcoholism is true, unless the beneficiary produced evidence, which you believed, showing the death certificate to be false.

"What you must do in deciding this case is to try to project your minds back to the date when Mr. Tardelli took out this life insurance, that date or a date prior to that, and determine for yourself whether he was in fact an excessive drinker, whether he had knowledge of that fact, and whether he intended to deceive. You have the records, the death certificate and some other hospital records, that would indicate one answer to the question of whether or not he drank to excess. On the other hand, you have got the testimony of his wife and an attorney which would negative that question, or that idea. And you have got to decide on the evidence and the logical inferences that flow from it in your own mind, just what Mr. Tardelli's condition was on that date."